UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRANDSAFWAY SERVICES, LLC, | Case No. 3:20-cv-00362-MMD-CLB |
| Plaintiff, | |
| v. | ORDER |
| LABORERS INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 169, | |
| Defendant. | |

I.    **SUMMARY**

Plaintiff BrandSafway Services, LLC seeks in part declaratory relief that it is not a party to a collective bargaining agreement with Defendant Laborers International Union of North America, Local 169, and that the Court determines whether this threshold issue should be decided by an arbitrator. (ECF No. 1.) Before the Court is Plaintiff's motion for preliminary injunction ("Injunction Motion") (ECF No. 2) to preliminary enjoin the arbitration, as well as Defendant's competing motion to compel arbitration ("Motion to Compel") (ECF No. 7), and motion to stay this case pending the Court's resolution of the Motion to Compel ("Motion to Stay") (ECF No. 8). As explained further below, the Court will deny Defendant's Motion to Compel because the question of whether a valid agreement exists between the parties is reserved for the Court's determination. Accordingly, Defendant's Motion to Stay will be denied as moot. Further, the Court will also deny Plaintiff's Injunction Motion because Plaintiff has failed to demonstrate either a likelihood of success on the merits or irreparable harm.

///

///

## II.     BACKGROUND

On July 16, 2018, Defendant renewed a prior collective bargaining agreement with the Nevada Chapter of the Association of General Contractors ("Nevada AGC"), an association comprising several member companies in several states, including Nevada. (ECF No. 7-6 at 6.) Before signing the Agreement, Defendant sent written notice to "Safway Services, LLC" ("Safway"), a member company of Nevada AGC and signatory to the predecessor 2015-2018 collective bargaining agreement. (ECF No. 7-3 at 49.) That notice, dated May 11, 2018, stated that Safway would be bound by the terms of the new Agreement unless it rendered timely written notice per Section 39 of the 2015-2018 collective bargaining agreement. (*Id.*)

Defendant asserts that in May 2017, the company "Safway Group" merged with the company "Brand Energy Infrastructure Services" to form Plaintiff "BrandSafway Services, LLC." (ECF No. 7 at 2.) But neither party has clarified the relationship between Safway Group and Safway. Plaintiff confirmed that the entity that performs work in Reno, "BrandSafway Services, LLC," was formerly known as "Safway Services LLC," but denied that there was any legal contractual relationship between "BrandSafway" and "Local 169." (ECF No. 7-3 at 2.)

Defendant then sent Plaintiff a grievance letter on August 1, 2019 ("First Grievance"), alleging Plaintiff failed to comply with the terms of the collective bargaining agreement—Laborers' Master Agreement ("Agreement" or "LMA")—by hiring workers in violation of their exclusive contract. (ECF No. 15-4.) Plaintiff responded, denying that it was party to any agreement with Defendant. (ECF No. 15-5.)

On October 2, 2019, Defendant sent Plaintiff a second grievance letter ("Second Grievance") seeking recognition of Plaintiff's obligation to comply with the Agreement. (ECF. No. 15-6.) Plaintiff again responded that it would not submit to the grievance and arbitration process because it was not a party to the Agreement. (ECF No. 15-7.)

Plaintiff next filed an Unfair Labor Practice charge with the National Labor Relations Board ("NLRB") on November 12, 2019 regarding Plaintiff's right to contract

1   with workers who were not members of Defendant Local 169. (ECF No. 15-10.) At the

2   NLRB hearing, which took place on February 18, 2020, Defendant stated that the First

3   Grievance was no longer pending against Defendant or any employer. (ECF No. 15-13

4   at 18.) The only remaining question was therefore "whether or not there is an agreement

5   between BrandSafway and the Laborers." (*Id.* at 19.) The NLRB failed to find any

6   evidence that Plaintiff and Defendant had a valid agreement.[1] (ECF No. 15-16 at 5.)

7          All the while, Defendant continued to seek arbitration of the Second Grievance.

8   (ECF Nos. 15-12, 15-14, 15-15.) Despite their disagreement about the authority of an

9   arbitrator to enforce the Agreement against Plaintiff, the parties subsequently moved

10   forward and scheduled an arbitration on the Second Grievance. (ECF No. 15-12.) On

11   November 22, 2019, Plaintiff agreed via email to "participate" in the arbitration:

12          subject to the following objections: (1) the Company is not party to an
           agreement with Laborers Local 169 and, therefore, the Company is not
13          legally bound to resolve this dispute in accordance with the terms of any
           such agreement, nor can the Company be compelled to submit any dispute
14          to arbitration; (2) the arbitrator lacks jurisdiction and authority to decide the
           issues of whether there exists an agreement to arbitrate and whether the
15          Company is legally bound to arbitrate; and (3) the Company expressly
           reserves its right to have that issue determined by a court of competent
16          jurisdiction.

17   (*Id.*) Three months later, Plaintiff informed Defendant and the arbitrator that it "does not

18   consent to arbitration . . . will not appear for a hearing . . . and will not agree to submit any

19   issue to an Arbitrator for resolution." (ECF No. 15-14.) Plaintiff reiterated its position that

20   "whether a contract between Parties exists . . . is an issue that may only be determined

21   by a federal court of law, and is not subject to arbitration." (*Id.*) This lawsuit followed.

22   **III.   DISCUSSION**

23          Defendant moves to compel arbitration to determine whether a binding labor

24   agreement exists between the parties. (ECF No. 7 at 1.) Conversely, Plaintiff moves to

25   ///

26

27          [1]The NLRB found "no evidence that Local 169 has a collective bargaining
           agreement with the Employer covering the work in dispute. Although Local 169 asserts
28          that the Employer is bound to the [Laborers' Master Agreement ("LMA")] as a successor
           to Safway Services, LLC, Local 169 has failed to establish that Safway Services was itself
           bound to the LMA." (ECF No. 15-16 at 5.)

1
2
enjoin arbitration pending the Court's determination of that same issue. (ECF No. 2 at 8-9.)

3
4
5
6
7
8
9
10
Defendant contends first that Plaintiff is bound by the Agreement because Plaintiff failed to timely terminate the Agreement per the terms of the 2015-2018 collective bargaining agreement. (ECF No. 7 at 15-16.) Defendant further asserts that Plaintiff consented to the arbitrator's authority when it agreed to participate in the arbitration. (*Id.* at 10; *see also* ECF No. 7-5 at 27.) Plaintiff maintains that it is not a party to the Agreement and objects to the arbitrator's jurisdiction to decide whether an agreement to arbitrate exists. (ECF No. 15 at 12-13; ECF No. 15-12 at 2.) The parties thus genuinely dispute whether Plaintiff is a party to the Agreement.[2]

11
12
13
14
15
16
17
18
19
20
That said, the threshold question now before the Court is not whether Plaintiff is bound by the Agreement, but who may determine whether Plaintiff is bound by the Agreement. Because the question of arbitrability is a legal question committed to the jurisdiction of the federal courts, the Court will deny both Defendant's Motion to Compel and Motion to Stay. However, Plaintiff has failed to provide sufficient evidence to demonstrate its entitlement to the extraordinary remedy of a preliminary injunction. Because the Court is unable to determine that Plaintiff is likely succeed on the merits of its declaratory relief claim or suffer irreparable injury, the Court will also deny the Injunction Motion. The Court first addresses Defendant's motions in more detail, below, and then Plaintiff's Injunction Motion.

21
**A.    Motion to Compel and Motion to Stay**

22
23
24
Federal courts, and not arbitrators, determine the existence of a labor contract for purposes of an agreement to arbitrate. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); *accord SEIU Local 121RN v. Los Robles Med. Ctr.*, 976 F.3d

25
26
27
28
[2]In a letter dated October 8, 2019, determining which issues were in dispute, Defendant clarified, "[t]here is an unresolved dispute between the Union and Brandsafway Services formerly Safway Services as to whether Brandsafway Services formerly Safway Services is bound to the current LMA." (ECF No. 15-8 at 2.) Responding on October 15, 2019, Plaintiff stated, "[w]hether or not BrandSafway Services is bound to the current Master Agreement is also not at issue within the jurisdiction of the Board of Adjustment, or an arbitrator. It is a legal question to be decided by federal court." (ECF No. 15-9 at 2.)

4

849, 861 (9th Cir. 2020). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The arbitrability of a grievance is a "threshold question . . . for judicial resolution." *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513, 516 (9th Cir. 1991). "Whether or not a company is bound to arbitrate, as well as what issues it may arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'" *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208 (1991) (quoting *AT&T Techs., Inc.*, 475 U.S. at 651).

The Court therefore agrees with Plaintiff that it, not the arbitrator, must decide whether Plaintiff agreed to arbitrate. (ECF No. 2 at 9-11 (making the argument).) Indeed, the Ninth Circuit reaffirmed earlier this year that the question of whether parties had formed a valid agreement to arbitrate a labor dispute is a question for federal district courts, not an arbitrator. *See SEIU Local 121RN*, 976 F.3d at 861 ("Without 'clear and unmistakable evidence,' then, we rely on the well-settled principle 'that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination.'") (quoting *Granite Rock, Co.*, 561 U.S. at 296); *see also Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d at 1041-42 (9th Cir. 2020) ("[T]he federal policy favoring arbitration of labor disputes plays a role only after a court has been satisfied that an arbitration agreement was validly formed.") (internal quotations omitted).

Moreover, in light of Plaintiff's repeated objections to the existence of an agreement, Defendant lacks the 'clear and unmistakable evidence' of an agreement to arbitrate required for the question of the existence of an agreement to be properly before an arbitrator. *See AT&T Techs., Inc.*, 475 U.S. at 649. Plaintiff's first communication with Defendant, the June 1, 2018 Letter, included its disavowal of any agreement between the parties. (ECF Nos. 15, 15-3.) And at every relevant point since the filing of Defendant's First Grievance, Plaintiff has asserted it is not subject to the Agreement, and does not consent to the arbitrator's authority to enforce the Agreement against it. (ECF Nos. 15,

1   15-5, 15-7, 15-9, 15-12, 15-14, 15-15.) Most persuasively, Plaintiff restated it did not

2   believe it was a party to the Agreement—and asserted that it reserved its objection to the

3   arbitrator's jurisdiction—within the same email in which it agreed to participate in the

4   scheduled arbitration. (ECF Nos. 15, 15-12.) No agreement to arbitrate therefore appears

5   to exist.

6          Further, the Court cannot, and does not, resolve today Defendant's claim that

7   Plaintiff automatically became a signatory to the Agreement when it failed to timely object.

8   Defendant alleges that Plaintiff is the successor to signatory Safway and that the

9   Agreement may be enforced against Plaintiff under the evergreen renewal clause of the

10  2015-2018 agreement. (*See* ECF No. 7 at 17-18.) This may be the case. However, neither

11  party has submitted evidence of Plaintiff's affiliation or lack thereof with Nevada AGC, nor

12  is there yet conclusive evidence that Plaintiff is subject to liability as the successor of the

13  now-defunct Safway. The Court must accordingly defer this question for resolution on the

14  merits.

15         Finally, Defendant claims that Plaintiff consented to arbitrate the question. (ECF

16  No. 7 at 1, 11 (proposing that that agreement to participate in the arbitration rebutted

17  Plaintiff's claim that it repeatedly refused to arbitrate), 19-20 (stating the same).) But

18  Plaintiff objected to the arbitrator's authority to determine whether a valid agreement

19  existed between the parties in every communication it sent to Defendant, including in its

20  email agreeing to "participate." (ECF Nos. 15-3 at 2, 15-5 at 2, 15-7 at 2, 15-9 at 2, 15-12

21  at 2, 15-14 at 2, 15-15 at 2-3, 4-5.) Agreeing to participate while maintaining an objection

22  to the arbitrator's jurisdiction to decide the dispute, then subsequently declining to

23  participate altogether before the arbitration occurs does not show such indisputable

24  consent. Accordingly, the Motion to Compel is denied.

25         In addition, Defendant's Motion to Stay requests that this litigation be stayed

26  "pending the result of Defendant's Motion To Compel Arbitration." (ECF No. 8 at 1.)

27  Because the Court will deny the Motion to Compel here, the Court will also deny the

28  Motion to Stay as moot.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.     Injunction Motion

Plaintiff requests the Court enjoin Defendant "from pursuing its arbitration claim pending a judicial determination by this Court regarding the existence of a binding agreement or other contractual relationship between the parties." (ECF No. 2 at 1.) Defendant did not oppose Plaintiff's Injunction Motion directly, but instead responded with the Motion to Compel and Motion to Stay.

"'An injunction is a matter of equitable discretion' and is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 32 (2008)). To qualify for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of hardships favors the plaintiff; and (4) that the injunction is in the public interest. *Winter*, 555 U.S. at 20. The Ninth Circuit also allows the "sliding scale" approach, which permits courts to issue injunctions when there are serious questions going to the merits and the balance of hardships tips sharply in the plaintiff's favor. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). Although *Winter* did not directly address the continued validity of the sliding scale approach, the Supreme Court "definitely refuted" permitting injunctive relief in circumstances where the moving party showed only a possibility instead of a likelihood of irreparable injury. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126-27 (9th Cir. 2009). Therefore, the Court may apply the sliding scale approach only in circumstances where the moving party has shown a likelihood of irreparable injury and that the injunction is in the public interest. *See All. for the Wild Rockies*, 632 F.3d at 1135.

The Court concludes that Plaintiff has not satisfied the first two *Winter* factors and will therefore deny the Injunction Motion.

### 1.     Likelihood of Success on the Merits

Plaintiff has failed to demonstrate that it is likely to succeed on its claim for declaratory relief. In its Injunction Motion, Plaintiff frames the merits question as twofold:

(1) that the collective bargaining agreement is not enforceable against Plaintiff because no contractual or other labor/management relationship exists between the parties; and (2) that the arbitrator does not have authority to determine whether an enforceable collective bargaining agreement exists between the parties. (ECF No. 2 at 9.) But while Plaintiff fully briefed the second question, the first remains unanswered by Plaintiff's briefing. As explained above, the Court agrees with Plaintiff's analysis that whether an agreement exists is ultimately a question for federal courts like this one. But while that is an adequate answer to the Motion to Compel, it is insufficient to support the Injunction Motion without further evidence that Plaintiff is not a party to the Agreement.

Further, while compelling arbitration in this instance would be inappropriate, the standard for granting a preliminary injunction is not the procedural inverse. When determining whether Plaintiff is likely to succeed on the merits, the Court must consider whether Plaintiff is likely to succeed in obtaining declaratory relief "[t]hat the Court enter an Order that BSS is not a party to the LMA." (ECF No. 1 at 6.) Plaintiff fails to provide the Court with enough information to make such a determination at this stage. Plaintiff also cites *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964), to support its Injunction Motion. (ECF No. 2 at 11.) But the issue before the Court in *Wiley* was whether to compel arbitration, not whether to issue a preliminary injunction to enjoin an arbitration. *See Wiley*, 376 U.S. at 544. In fact, the Supreme Court clearly stated in *Wiley* that even though it would not compel arbitration, it was still entirely possible that the collective-bargaining agreement could be enforced against a post-merger company:

> We hold that the disappearance by merger of a corporate employer which has entered into a collective bargaining agreement with a union does not automatically terminate all rights of the employees covered by the agreement, and that, in appropriate circumstances, present here, the successor employer may be required to arbitrate with the union under the agreement.

*Id.* at 548. Just as in *Wiley*, the Court may simultaneously deny the Motion to Compel and reserve a decision on the question of whether Plaintiff is a party to the Agreement.

///

1
2
3
4
5
6

In addition, while Defendant directly alleges Plaintiff is the successor in interest to Safway (ECF No. 7 at 16), Plaintiff asserts only that no one has offered proof it should be bound by Safway's contracts. Plaintiff points out that the NLRB was unable to conclude that even Safway itself would be bound by the current Agreement (ECF No. 15-16 at 5), but never denies outright that it is Safway's successor in interest, nor does it show any evidence to that effect.

7
8
9

Neither party has submitted sufficient evidence to show a likelihood of success on the merits.[3] But the burden rests with the Plaintiff. Accordingly, at this time, Plaintiff has failed to show that it is likely to succeed on the merits of its declaratory relief action.

10

**2.    Irreparable Harm**

11
12
13
14
15
16
17

Plaintiff's allegations of irreparable harm do not meet the Ninth Circuit's standard. Plaintiff submits that courts in various districts have determined that compelling a party to arbitrate an issue that they have not agreed to submit to arbitrate constitutes de facto irreparable harm.[4] (ECF No. 2 at 13.) Some district courts in this Circuit have followed that reasoning by finding that depriving a party of its right to select the forum to resolve disputes adequately demonstrates irreparable harm.[5] But the Ninth Circuit does not

18
19
20

[3]Both parties' arguments on this point remain conclusory. This question would have been easier to resolve, for example, had either party submitted a full list of Nevada AGC affiliates that are signatories to the current Agreement, a declaration clarifying whether BrandSafway, LLC is or is not the successor in interest to Safway, or other evidence that would tend to show whether or not there is a valid and enforceable agreement between the parties.

21
22
23
24
25
26
27

[4]*See Wash. Metro. Area Transit Auth. v. Local 689, Amalgamated Transit Union*, 113 F. Supp. 3d 121, 128 (D.D.C. 2015) (finding WMATA would suffer irreparable harm if compelled to arbitrate grievances for employees not covered by the collective bargaining agreement or for a grievance that is not arbitrable); *Chicago Sch. Reform Bd. of Trustees v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d 987, 996 (N.D. Ill. 1999) ("Forcing a party to arbitrate a matter that the party never agreed to arbitrate, regardless of the final result through arbitration or judicial review, unalterably deprives the party of its right to select the forum in which it wishes to resolve disputes."); *Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union, Local 365, S.E.I.U., A.F.L.-C.I.O.*, 975 F. Supp. 445, 447 (E.D.N.Y. 1997) (finding company "may be presumed to suffer irreparable harm if forced to arbitrate a dispute it did not intend to be subject to arbitration after its contract expired").

28

[5]*See Berthel Fisher & Co. Fin. Servs., Inc. v. Frandino*, Case No. CV-12-02165-PHX-NVW, 2013 WL 2036655, at *8 (D. Ariz. May 13, 2015); *Morgan Keegan & Co. v.*

agree. *See Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990) ("The district court's principal error lies in its assumption that unnecessarily undergoing arbitration proceedings constitutes irreparable injury. That is simply not the case."). The Ninth Circuit specifically noted in *Camping Construction* that "any arbitral award obtained by the party seeking arbitration will have no preclusive effect in a subsequent confirmation or *vacatur* proceeding as long as the objecting party has reserved its right to a judicial, rather than arbitral, determination of arbitrability." *Id.* Because parties like Plaintiff are left with "a perfectly adequate legal remedy for an improper award," the only remaining harm incurred would be "the short time and slight expense involved in the typical arbitration." *See id.*

The Court recognizes that if Plaintiff was never a signatory to the Agreement, compelling arbitration of the Second Grievance would require Plaintiff to arbitrate an issue that is reserved to the jurisdiction of the federal courts, potentially incurring unnecessary costs or even an adverse arbitral award. But the Court cannot find that additional time and expense alone would be truly "irreparable." Moreover, while submitting the question to the arbitrator may result in duplicative efforts for both parties, doing so does not preclude Plaintiff from receiving a final judicial determination—in part because, as described above, Plaintiff did not consent to submitting the arbitration question to the arbitrator. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("If, on the other hand, the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently."); *U.A. Local 342 Apprenticeship & Training Trust v. Babcock & Wilcox Const. Co. Inc.*, 396 F.3d 1056, 1058 (9th Cir. 2005) (reasoning that deference is not owed to an arbitrator's decision finding against parties who did not consent to the collective bargaining agreement or the

///

---

*McPoland*, 829 F. Supp. 2d 1031, 1036 (W.D. Wash. 2011); *Morgan Keegan & Co., Inc. v. Drzayick*, Case No. 1:11-CV-00126-EJL, 2011 WL 5403031, at *4 (D. Idaho Nov. 8, 2011).

1   arbitrator's authority). Accordingly, the Court finds Plaintiff has not demonstrated it is likely
2   to suffer irreparable harm.

3   **IV.    CONCLUSION**

4          The Court notes that the parties made several arguments and cited to several
5   cases not discussed above. The Court has reviewed these arguments and cases and
6   determines that they do not warrant discussion as they do not affect the outcome of the
7   motions before the Court.

8          It is therefore ordered that Defendant's Motion to Compel (ECF No. 7) is denied.

9          It is further ordered that Defendant's Motion to Stay (ECF No. 8) is denied as moot.

10         It is further ordered that Plaintiff's Injunction Motion (ECF No. 2) is denied.

11         DATED THIS 19th Day of November 2020.

12

13

14                                          MIRANDA M. DU
                                            CHIEF UNITED STATES DISTRICT JUDGE
15

16

17

18

19

20

21

22

23

24

25

26

27

28

11